**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Einar J. FERRO, Jr.,**
**Defendant-Appellant.**

**No. 82–3758.**

United States Court of Appeals,
Fifth Circuit.

June 27, 1983.
Rehearing and Rehearing En Banc
Denied Aug. 15, 1983.

Bernard E. Burk, Jacob Taranto, III, New Orleans, La., for defendant-appellant.

John P. Volz, U.S. Atty., Robert T. Myers, Harry W. McSherry, Asst. U.S. Attys., New Orleans, La., for plaintiff-appellee.

Before INGRAHAM, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

In September 1982, Einar J. Ferro, Jr., was convicted by a jury of a three-count indictment for his role in the theft of two Zim Line containers. All but six months of defendant's three concurrent five-year sentences were suspended and defendant was placed on probation for three years. On appeal Ferro primarily attacks the submission of an inference instruction, the failure to submit a "possession" definition, and the admission of coconspirators' statements. Concluding that the district court correctly presented the law in the instructions and properly admitted the coconspirators' statements, we affirm the conviction.

Appellant complains of the inference instruction, its wording, and the failure to provide other requested instructions. To determine whether the jury instructions adequately stated the law, we review the instructions as a whole in the context of the entire trial. *See United States v. Park,* 421 U.S. 658, 674–75, 95 S.Ct. 1903, 1912–13, 44 L.Ed.2d 489 (1975); *United States v. Graves,* 669 F.2d 964, 970–71 (5th Cir.1982). If the charge is accurate and correct, we leave to the district court's discretion the amplification necessary for that particular jury in light of the whole trial. *United States v. Bayer,* 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947). Consequently, we recount the evidence as a backdrop for the court's charge and admission of coconspirators' statements.

Ferro was working as clerk on the New Orleans riverfront when another clerk, Ernest Schmolke, contacted him about the possibility of stealing merchandise from the Erato Street Wharf. As clerks, their primary duties and responsibilities involved handling cargo that arrived at the New Orleans port of entry. Unknown to Ferro, Schmolke had also been in contact with Robert Guy, a wholesale rental dealer in Picayune, Mississippi, about the same theft. To obtain information about incoming shipments, Schmolke and Ferro contacted Dale Luke, a clerk at the Erato Street Wharf. When two Zim Line containers arrived at the wharf, Luke informed Schmolke of the container numbers and their contents, 1,344 cases of wine and 62 road equipment tires. Schmolke relayed this information to Guy and Ferro and the group decided to steal those containers. Schmolke then arranged for two drivers to load the containers on trucks at the Erato Street Wharf.

On the morning of August 12, 1981, Schmolke met the drivers outside the wharf and gave them three bills of lading. The extra bill of lading was to be used if one of the containers was inaccessible. The containers were loaded onto the trucks and Schmolke instructed the drivers to meet him at Irish Bayou. He then telephoned Guy and Ferro about the rendezvous point. After the truck drivers arrived at Irish Bayou, where Schmolke, Guy, and Ferro were already waiting, the five began the trip to Picayune, where the containers

would be stored and the goods sold. To avoid weigh stations and enforcement officials, the group traveled back roads in a caravan, with Guy and Schmolke leading and Ferro trailing the trucks. Once the containers were in Guy's warehouse, the three opened them and examined their contents. Although Guy had primary responsibility for selling the stolen merchandise, all three agreed to find buyers for it. Because of the poor quality of the wine and the unusual size of the tires, Guy was unable to sell the goods. Consequently, Ferro and Schmolke went to the warehouse a few months later to check on the wine and determine the size of the tires. Eventually, Customs discovered the containers and arrested the three.

On June 4, 1982, Ferro, Schmolke, and Guy were indicted by a grand jury of theft from the Erato Street Wharf, 18 U.S.C. § 659,[1] unlawful removal of goods from Custom's custody, 18 U.S.C. § 549,[2] and interstate transportation of stolen goods, 18 U.S.C. § 2314.[3] Each was also charged under 18 U.S.C. § 2 on all counts.[4] On July 16, 1982, a superseding indictment was filed

against Ferro that added a conspiracy count, 18 U.S.C. § 371,[5] to the other three counts. The count against Ferro pertaining to unlawful removal of goods from Custom's custody was dropped prior to trial. Although Guy plead guilty to a superseding conspiracy count and Schmolke plead guilty to the theft from foreign shipment count, Ferro plead not guilty to all charges. After a jury trial in which both Guy and Schmolke testified against Ferro, the jury returned a guilty verdict on all three counts. Ferro was sentenced to five years imprisonment on each count. The court ordered the sentences to run concurrently and suspended all but six months of the sentences. Ferro was placed on probation for a period of three years and now appeals.

■ Appellant argues that the district court erred in submitting an inference instruction[6] that permitted the jury to infer both that he knew the property was stolen and that he participated in the theft of the property, which are elements of counts III and II, respectively. First, Ferro complains that the use of the inference instruction was inappropriate. As the Supreme Court

1. 18 U.S.C. § 659 provides in part:
    Whoever embezzles, steals, or unlawfully takes [or] carries away . . . from any storage facility, platform or wharf . . . with intent to convert to his own use any goods or chattels [having a value in excess of $100.00, and] moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express or other property [shall be guilty of an offense against the United States].

2. 18 U.S.C. § 549 provides in part:
    Whoever . . . unlawfully removes any merchandise or baggage in customs custody or control [shall be guilty of an offense against the United States].

3. 18 U.S.C. § 2314 provides in part:
    Whoever transports in interstate or foreign commerce any goods, ware, merchandise, securities or money, of the value of $5000 or more, knowing the same to have been stolen, converted or taken by fraud [shall be guilty of an offense against the United States].

4. 18 U.S.C. § 2 provides:
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

5. 18 U.S.C. § 371 provides in part:
    If two or more persons conspire . . . to commit any offense against the United States . . . in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall [be guilty of an offense against the United States].

6. The inference instruction read:
    If you find beyond a reasonable doubt, from the evidence in this case, that the property described in the indictment was stolen, and that while recently stolen, the property was in the possession of the accused, Mr. Ferro, you may, from those facts, draw the inference, not only that the property was possessed by the accused with knowledge that the property was stolen, but also that the accused participated in some way in the theft of the property, unless the possession of the recently stolen property by the accused is explained to the satisfaction of the jury by other facts and circumstances in evidence in the case.

noted in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1972), however, "[f]or centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods." *Id.* at 843, 93 S.Ct. at 2362. Similarly, this circuit has "held in numerous cases that unexplained possession of stolen property may be shown to permit an inference by the finder of fact that the possessor participated in the theft of the property." *United States v. Marchbanks,* 469 F.2d 72, 74 (5th Cir.1972) (citations omitted). Second, Ferro asserts that the district court erred by not explicitly instructing the jury that while they may draw the inference, they are not compelled to do so. Appellant's suggestion that the "inference" was in fact a "presumption" is unfounded. In addition to instructing the jury that they *may,* rather than *shall* draw the inference,[7] the district court instructed them that while the law *permits* them to draw the inference, they must acquit the accused, if any possession is consistent with innocence or if any juror entertains reasonable doubt of guilt.[8] The district court therefore appropriately and correctly gave the jury a permissive inference instruction.

Next, Ferro complains of the court's failure to submit a definition of possession.[9] He argues that since there was no evidence of sole actual possession, *Barfield v. United States,* 229 F.2d 936 (5th Cir.1956), requires a legal definition of possession for the jury to make that finding. In *Barfield,* the jury was given a presumption instruction.[10] The defendant admitted a type of possession (driving the car) and the fact that the car had been recently stolen was undisputed. Consequently, the submission of the presumption instruction "practically amounted to an instruction that on the facts the accused was presumed to be guilty, because the element of knowledge was the only unproved element of the offense." *Bernstein v. United States,* 234 F.2d 475, 486 (5th Cir.1956). Although Ferro admitted a type of possession (his "playing along" with the scheme and his agreement to "move" the merchandise) and the fact that the containers had recently been stolen was undisputed, the present case differs significantly from *Barfield.* First, the district court gave a permissive inference instruction rather than a presumption in-

---

7. See note 6, *supra.*

8. The instruction read:

   It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in the case warrant any inference which the law permits you to draw from possession of recently stolen property. If any possession the accused may have had of recently stolen property is consistent with innocence, or if you entertain reasonable doubt of guilt, you must acquit the accused.

9. In his brief Ferro argues that the Devitt and Blackmar definition of possession would have been appropriate.

   The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

   A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either di-

rectly or through another person or persons, is then in constructive possession of it.

   The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

   You may find that the element of possession as that term is used in these instructions is present if you find beyond reasonable doubt that the defendant had actual or constructive possession, either alone or jointly with others.

   An act or a failure to act is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 16.07 (1977).

10. The *Barfield* court instructed:

   Proof that a defendant was in possession of property (the accused admitted he was driving the automobile) recently stolen raises a presumption of guilty knowledge.

*Bernstein v. United States,* 234 F.2d 475, 486 (5th Cir.1956).

struction. Thus, there was no prejudicially erroneous presumption of guilt. Second, the district court instructed the jury that appellant must be acquitted if his possession was satisfactorily explained. The jury, therefore, was required to evaluate the credibility of Ferro's explanation to determine if the inference of guilty knowledge and participation could be rationally drawn from his possession. Ferro was neither the incredible nonpossessor of *Fitzpatrick v. United States*, 410 F.2d 513 (5th Cir.1969), nor the apparently innocent possessor of *Barfield;* instead, the jury determined that he was an admitted possessor with an unbelievable story. In light of the circumstances of the case and the instructions given by the district court, the failure to submit a definition of possession was not prejudicial error.[11]

▉ Appellant's contentions of error concerning the conspiracy are unfounded. There was ample evidence in the record to support the district court's conclusion that a conspiracy existed, which allowed for the admission of coconspirator's statement. Further, the district court correctly refused to instruct the jury on the termination of the conspiracy. Since the aim of the conspiracy was to make a profit by selling the contents of the containers, rather than to retain the contents for personal consumption, "the conspiracy continues until the fruits of the crime are disposed of." *United States v. Iacovetti,* 466 F.2d 1147, 1149 (5th Cir.1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270 (1973). Moreover, there was no evidence that Ferro took the necessary affirmative action to withdraw from the conspiracy. *See Pinkerton v. United States,* 328 U.S. 640, 646, 66 S.Ct. 1180, 1183, 90 L.Ed. 1489 (1946).

We have not overlooked appellant's other contentions that are not discussed, but find them without merit.

Accordingly, the conviction is AFFIRMED.

---

**11.** We note that even if Ferro had not sought to explain his admitted involvement, the failure to submit the possession definition would have been no more than harmless error. The record contains testimony that Ferro was involved in the scheme from the beginning, that he contacted Luke for information about the containers, that he was part of the caravan transporting the containers, and that he agreed to help sell the merchandise. Since there was suffi-cient evidence without the inference, any inaccuracies in the permissive inference instruction caused by the failure to define possession is harmless. *Cf. Ulster County Court v. Allen,* 442 U.S. 140, 160, 99 S.Ct. 2213, 2226, 60 L.Ed.2d 777 (1979) (it is "irrelevant in analyzing a mandatory presumption, but not in analyzing a purely permissive one, that there is ample evidence in the record other than the presumption to support a conviction").