UNITED STATES of America, Appellee,

v.

Jamie ROSE, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Norman VERRILL, Defendant, Appellant.

Nos. 95–1171, 95–1752.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1997.

Decided Jan. 30, 1997.

Mark F. Itzkowitz, Boston, MA, for appellant Jamie Rose.

Thornton E. Lallier, Amesbury, MA, with whom Lallier & Anderson was on brief, for appellant Norman Verrill.

Kenneth P. Madden, Assistant U.S. Attorney, Providence, RI, with whom Sheldon Whitehouse, U.S. Attorney, and Margaret E. Curran, Assistant U.S. Attorney, were on brief, for appellee.

Before CYR, Circuit Judge, COFFIN, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

These two appeals arise out of the armed robbery of the Dexter Credit Union in Central Falls, Rhode Island on April 6, 1994. Jamie Rose was convicted of conspiracy to rob a federally insured credit union in violation of 18 U.S.C. §§ 371, 2113(a), and of being a felon in possession of a firearm in violation of § 922(g)(1). Norman Verrill was convicted of the same two offenses and also of armed robbery and robbery of a federally insured credit union. 18 U.S.C. § 2113(a), (d). Rose was sentenced to 60 months' imprisonment on the conspiracy count and to 120 months' imprisonment for being a felon in possession; the sentences are consecutive. Verrill was sentenced as a career offender and an armed career criminal to a term of 264 months.

On appeal, Rose raises a plethora of issues, two of which are weightier than the rest and require us to address issues previously unresolved by this court. The first concerns the jury charge that may properly be given based on evidence of a defendant's possession of recently stolen property. The second is whether the trial court abused its discretion

by admitting a potentially inflammatory photograph into evidence, and if so, whether this court has discretion to determine whether the error was harmless where the government has not so argued. Verrill appeals exclusively from the determinations made as to his sentence. We affirm the convictions and the sentences.

## I.

During the late morning of April 6, 1994, three men wearing masks entered the Dexter Credit Union in Central Falls, Rhode Island. The credit union was insured by the National Credit Union Administration. One robber brandished a semiautomatic pistol while the two others took money from the teller stations. A fourth masked man waited outside in a black pickup truck, which the robbers used as a get-away vehicle. Credit union employees determined that $10,584 had been stolen.[1]

Police arrived at the scene a few minutes after the robbers had fled. They found the get-away truck abandoned, with its engine running, a few blocks from the credit union. The ignition had been "popped," and the police later learned that the truck had been stolen two days before.

The authorities thought they knew where to find the culprits. Both the FBI and the Providence Police Department had been investigating Verrill, Rose, David Vial and Christopher Thibodeau in connection with a series of bank robberies. A confidential informant had provided information that the four men were involved in robbing banks. A team of officers, consisting of FBI agents and Providence police officers who were part of a bank robbery task force, went to Vial's home in North Providence and waited outside. A few minutes later, a champagne-colored Nissan Pathfinder carrying four men pulled into the building parking lot. Task force members had seen Rose and Thibodeau in the Pathfinder earlier that day and knew that the vehicle had been stolen some months earlier and that the license plates had been stolen eleven days before the bank hold-up.

The task force members approached the Pathfinder and identified themselves. Rose, who was driving, pulled away at high speed, nearly hitting two officers in the process. The officers began shooting. Vial managed to escape temporarily: he was found about forty-five minutes later hiding in a bush. The officers ordered Rose, Verrill and Thibodeau out of the vehicle. Thibodeau, who had been wounded, was lying on the front seat; when the police removed him from the car, they found that he was holding a Glock semi-automatic pistol in his left hand and had a Smith & Wesson automatic pistol in the waistband of his pants. Both were loaded with Winchester 9 millimeter Black Talon and Federal Cartridge hardball 9 millimeter round ammunition. The officers found two small gym bags, containing over nine thousand dollars and makeshift masks, in the back seat of the Pathfinder. Some of the money was banded by paper money straps bearing the markings of the Dexter Credit Union. The four men were arrested.

Rose had suffered a scalp laceration and was brought to Rhode Island Hospital. The physician's assistant who treated him found a screwdriver, a pager and an ammunition clip from a Glock semi-automatic pistol in his trouser pockets. These items had not been found in an earlier pat-down of Rose.

Later that night, an FBI agent executed a search warrant at Rose's home in Providence. There, the agent found a box of Federal Cartridge ammunition designed to hold 50 rounds of ammunition but only containing 39 rounds, as well as a leather pistol case. The agent also seized a photograph album containing pictures of Rose and others. Among the photos were five of Rose holding what appeared to be a Glock semiautomatic pistol. One of the photos showed Rose, finger on the trigger, pointing the pistol at the head of another young man.

Defendants were charged with conspiracy to rob the Dexter Credit Union; armed robbery of the credit union; robbery of the credit union; using and carrying a firearm during a crime of violence; and possession of a firearm by previously convicted felons. Vial and Thibodeau, two of the men in the

---

1. The loss was initially thought to be $10,913.53, but that figure was later adjusted downward.

car, pleaded guilty to some of the counts and the rest of the charges against them were dismissed. Verrill and Rose proceeded to trial.

Rose moved to sever his trial from Verrill's and to sever the felon-in-possession charge from the other charges. The motions were denied after a hearing, as was a motion for reconsideration. The district court ruled that, because there was no evidence of what Verrill's defense would be, there was no basis for concluding that Rose and Verrill had antagonistic defenses.

Vial, a government witness, testified that he, Verrill and Thibodeau entered the credit union while Rose, who had the Glock, remained outside in the truck. Vial said that Thibodeau had waited at the door of the credit union holding the Smith & Wesson while he and Verrill took the money. He also testified that all four men fled in the truck but then switched to a second stolen vehicle which he and Rose had left near the credit union earlier that day, and that soon afterwards, they moved to the Pathfinder.

Rose's consecutive 60 and 120 month sentences were based on the guideline for robbery, U.S.S.G. § 2B3.1, as dictated by the conspiracy guideline, U.S.S.G. § 2X1.1. The conspiracy guideline requires that the base offense level for a conspiracy conviction be that of the substantive offense plus adjustments for any intended conduct.[2] *See* U.S.S.G. § 2X1.1(a).

Verrill was sentenced both as an armed career criminal pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4, and as a career offender pursuant to U.S.S.G. § 4B1.1. As either an armed career criminal or as a career offender, Verrill's offense level was 34

and his criminal history category VI, which translates into a guidelines range of 262 to 327 months. He was sentenced to 264 months. This appeal ensued.

## II.

Rose argues that his conviction should be reversed for several reasons: that the trial court abused its discretion in denying the motions to sever his trial from Verrill's and to sever the felon-in-possession count; that the trial court made erroneous and prejudicial evidentiary rulings; and that the charge to the jury was at times erroneous and at times incomplete. We deal first with his more serious arguments.

*Jury Instruction on Recently Stolen Property*

Rose questions several aspects of the court's charge to the jury. The most significant challenge concerns the instruction regarding the inferences that the jury may permissibly draw from the defendant's possession of recently stolen items. In the context of discussing the stolen get-away vehicles, the court instructed the jury that the possession of recently stolen property, if not satisfactorily explained, could support an inference not only that the person in possession knew that the property was stolen, but also that he participated in the theft.[3]

This raises a question of first impression in this circuit.[4] The challenged instruction is reviewed for abuse of discretion to determine whether the charge, taken as a whole, " 'fairly and adequately submits the issues in the case to the jury.' " *United States v. Picciandra,* 788 F.2d 39, 46 (1st Cir.1986) (quoting *United States v. Fischbach*

---

2. After determining the specific offense characteristics, the court calculated the offense level for the conspiracy count as 31 and the offense level for the felon-in-possession count as 27. The district court appropriately used the higher offense level of 31, *see* U.S.S.G. § 3D1.3, and determined that Rose had a criminal history category of V. The guideline range was 168 to 210 months. With a statutory maximum of 5 years for the conspiracy conviction and 10 years for the felon-in-possession conviction, the district judge determined the range to be 168 to 180 months. He effectively sentenced Rose to the statutory maximum.

3. Rose also argues that the phrase "if not satisfactorily explained" impermissibly penalized him for failing to take the stand. This latter argument has been rejected by the Supreme Court. *Barnes v. United States,* 412 U.S. 837, 846–47, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973).

4. It has long been the law that the jury may infer from an individual's possession of recently stolen items that the individual knew the property had been stolen. *See generally United States v. Farnkoff,* 535 F.2d 661, 666–67 (1st Cir.1976).

& *Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984)).

■ We join the other circuit courts of appeals that have concluded that possession of recently stolen property may support an inference of participation in the theft of that property. *United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir.1995); *United States v. Ferro*, 709 F.2d 294, 296–97 (5th Cir.1983); *United States v. DiGeronimo*, 598 F.2d 746, 754–55 (2d Cir.1979); *United States v. Long*, 538 F.2d 580, 580–81 (4th Cir.1976) (per curiam); *United States v. Plemons*, 455 F.2d 243, 246 (10th Cir.1972). These cases rely in large part on the widespread acceptance of the principle and on the common sense reasoning that supports the inference. *See, e.g., Long*, 538 F.2d at 581.

We emphasize the limits on instructions as to this inference. First, the instruction may not be given in every case where a defendant was in possession of recently stolen property. As the Second Circuit noted, in certain situations the inference "would verge on the irrational" in light of the other evidence in the case. *United States v. Tavoularis*, 515 F.2d 1070, 1074–75 (2d Cir.1975); *see also DiGeronimo*, 598 F.2d at 754. For example, in the absence of additional evidence tending to support the inference, it may not be appropriate to give the instruction. The court must always act as a check, ensuring "that the evidence warrants permitting the jury to draw [the] inference." *Clark*, 45 F.3d at 1250.

Second, the instruction involves a permissive inference rather than a presumption. The decision about whether. the defendant's unexplained possession of recently stolen property supports the conclusion that the defendant participated in the theft is made by the jury based on all of the evidence. *Ferro*, 709 F.2d at 297.

■ With this in mind, we turn to Rose's claim that the five month period between the theft of the Pathfinder and his arrest lessens the applicability of the inference. This claim ignores the other evidence in the case. The license plates on the Pathfinder were stolen within eleven days of the robbery, the black pickup truck within two days of the robbery, and Vial's testimony linked Rose to the truck. On these facts, the inference that Rose participated in the theft of the get-away cars is not at all unreasonable or unwarranted.

*Evidentiary Rulings*

■ Rose argues that the district court erred by admitting into evidence several items found in his apartment and that this error was not harmless. Specifically, he asserts that the admission of photos of himself and others with what appears to be a Glock pistol, of a leather pistol case and a photograph showing where it was found in his apartment and of a box of ammunition for a 9 millimeter pistol violated Fed.R.Evid. 403, because the prejudicial impact of these items far outweighed their probative value. Review of the trial court's evidentiary rulings is for abuse of discretion. *United States v. Lombard*, 72 F.3d 170, 187 (1st Cir.1995).

This evidence, in general, met a threshold test of relevance. Pistols played an important role in the charged crimes. One of the robbers brandished a pistol inside the credit union. Vial testified that Rose was armed with a second pistol. Two 9 millimeter pistols were seized from codefendant Thibodeau, and a clip of ammunition for a semiautomatic pistol was found on Rose at the hospital. Items linking Rose to pistols tended to corroborate Vial's testimony that Rose was a participant in the conspiracy and that he had possessed the Glock.

The presence of a leather case for a pistol in Rose's home is evidence that Rose kept such a weapon there before the crime. That the case was manufactured by Browning rather than by Smith & Wesson or Glock goes to the weight rather than to the relevance of the evidence. The jury, during their deliberations, had access to the two seized weapons and to the pistol case and therefore could have determined whether either of the pistols fit the case.

The relevance of the ammunition is even more readily apparent. The ammunition was of the same type as that found in the two guns seized when Rose and his co-defendants were apprehended. The box was marked as holding fifty rounds, but contained only thir-

ty-nine rounds. The jury reasonably could have inferred that at least some of the missing rounds had been used to load the two pistols.

■ In general, the photographs showing Rose with a gun are relevant. FBI Special Agent Kevin Eaton testified at trial that the gun in the photographs appeared to be a Glock firearm; Eaton stated that Glocks have "a very distinctive" look. The photographs thus link Rose to one of the weapons seized, providing strong corroboration for Vial's inculpatory testimony.

■ The pistol case and accompanying photograph, the ammunition, and four of the photographs showing Rose with what appeared to be a Glock were not unduly prejudicial. One of the photos, however, which shows Rose, finger on the trigger, with his gun pointed at the head of another person, is potentially quite inflammatory. Rose is correct that the photo could lead a jury to believe that anyone who would point a possibly loaded pistol at the head of a friend is extremely reckless and capable of criminal acts. Moreover, this photograph was at best cumulative of the four other photographs linking Rose to the gun. The admission of this photograph into evidence constituted an abuse of discretion. The government all but conceded as much at oral argument.

■ In the usual case, a non-constitutional evidentiary error will be treated as harmless if it is highly probable that the error did not contribute to the verdict. *United States v. Rodriguez Cortes,* 949 F.2d 532, 543 (1st Cir.1991); *United States v. Benavente Gomez,* 921 F.2d 378, 386 (1st Cir. 1990). In a harmless error inquiry, the government bears the burden of persuasion with respect to showing that the error was harmless. *United States v. Olano,* 507 U.S. 725, 734–35, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). By contrast, in a plain error argument, the defendant bears the burden. *Id.* The government here failed to argue that the court's admission of the photograph, if error, would be harmless. Does the government's

failure to raise this issue in its brief[5] preclude further review and automatically require that the conviction be reversed and sent back for trial? We think not. Here we review to determine whether the government met its burden despite its failure explicitly to argue harmless error.

■ We join several other circuit courts of appeals in holding that appellate courts have the discretion on direct appeal to overlook the government's failure to argue that the admission of the challenged evidence, if error, was harmless, and that appellate courts may therefore consider the issue of harmlessness sua sponte. *Horsley v. Alabama,* 45 F.3d 1486, 1492 n. 10 (11th Cir. 1995); *United States v. Langston,* 970 F.2d 692, 704 n. 9 (10th Cir.1992); *Lufkins v. Leapley,* 965 F.2d 1477, 1481 (8th Cir.1992); *United States v. Pryce,* 938 F.2d 1343, 1348 (D.C.Cir.1991) (opinion of Williams, J.); *United States v. Giovannetti,* 928 F.2d 225, 227 (7th Cir.1991). In *Rodriguez Cortes,* this court noted, but did not resolve, the question, having found the evidence admitted was not harmless. 949 F.2d at 543.

■ Here, we find that the evidence admitted was plainly harmless. The photograph was cumulative, the weight of the additional evidence overwhelming. Under such circumstances, "it would be a waste of judicial resources to require a new trial where the result is likely to be the same." *Id.*

Courts have variously grounded the authority to engage in sua sponte harmless error review on the arguably mandatory language of Rule 52(a), which states that any error which does not affect substantial rights "*shall* be disregarded," and on other related doctrines. *See Pryce,* 938 F.2d at 1351 (Randolph, J., concurring). Of obvious concern is the cost to the public of new trials because of carelessness on the part of the prosecutors on appeal where the other evidence has established guilt beyond a reasonable doubt and there is little reason to think the error infected the jury deliberations. Also relevant is the interest in avoiding incentives to

---

**5.** At oral argument, in response to questions from the court, the government suggested that

any error must be harmless.

the government to fail to make the proper arguments.

■ The Seventh Circuit decides whether to undertake the harmless error analysis sua sponte based on a three part test considering "[1] the length and complexity of the record, [2] whether the harmlessness of the error or errors found is certain or debatable, and [3] whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court." *Giovannetti*, 928 F.2d at 227. While we find helpful the reasoning of the Seventh Circuit, we do not restrict ourselves to the *Giovannetti* test. *See Pryce*, 938 F.2d at 1348 (opinion of Williams, J.) (agreeing with the general approach of *Giovannetti* but not adopting the specific factors). The exercise of discretion involves the balancing of many elements. Among these are the state of the record and whether the arguments that the government does make provide assistance to the court on the harmlessness issue.[6]

The government's case is, of course, put at risk by its failure to argue that admission of the evidence was harmless. Here, it survives the risk; in other situations, it may not. Although the district court abused its discretion by admitting the photograph of the mock shooting, that is not a basis for overturning the conviction.

*Severance*

■ Rose challenges the district court's denial of motions to sever his trial from Verrill's and to sever the felon-in-possession count. *See* Fed.R.Crim.P. 14. Review is for abuse of discretion. *United States v. Levy–Cordero*, 67 F.3d 1002, 1007 (1st Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996). Defendant on appeal must make a strong and specific showing of prejudice. The prejudice shown must be greater than that inherent in trying multiple counts and multiple defendants together. *United States v. Yefsky*, 994 F.2d 885, 896 (1st Cir.1993); *United States v.*

*Walker*, 706 F.2d 28, 30 (1st Cir.1983). Rose fails to meet this high standard.

■ Rose argues that being tried with Verrill forced him to abandon his intention of testifying on his own behalf. He maintains that he did not participate in the robbery but merely picked up Verrill, Vial and Thibodeau when they called to ask him to do so, and that he only learned of the robbery after the three men got into the car. He argues that if he had testified, Verrill would have taken the stand to implicate him. Rose concludes that he and Verrill had antagonistic defenses which required severance.

The Supreme Court has held that conflicting defenses of codefendants do not necessarily require severance, reasoning that the risk of prejudice will vary with the facts of each case. *Zafiro v. United States*, 506 U.S. 534, 538, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993). This court has further refined the analysis, holding that antagonistic defenses only require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other. *United States v. Smith*, 46 F.3d 1223, 1230 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995).

The trial judge explained that he was denying the motion because he did not know whether Verrill actually would testify if Rose did, and if so what the substance of that testimony would be. The judge offered to entertain the motion anew during trial if Verrill did in fact testify, but he had no basis prior to trial for concluding that the codefendants had inconsistent defenses. Of course, the trial judge had a "continuing duty at all stages of the trial to grant a severance if prejudice [ ] appear[ed]." *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960). Like the trial judge in *Schaffer*, the trial judge here was "acutely aware of the possibility of prejudice," *id.*, and was explicit about his willing-

---

6. Here, many of the arguments made by the government as to why the photograph was not prejudicial under Rule 403 also go to the question of harmlessness. Another example of this phenomenon is when the government marshals the evidence in response to an argument that the verdict was against the weight of the evidence. That evidence too would be of assistance to the court in a harmless error analysis.

ness to sever if a prejudicial situation arose during trial.

That eventuality never occurred. Neither Rose nor Verrill put on any evidence tending to show conflicting defenses. Rose put on two witnesses who testified that he had not been the driver of the black pickup truck,[7] and Verrill put on no witnesses at all. This testimony was insufficient to establish that the codefendants had antagonistic defenses.[8] Nor were the arguments made by their counsel necessarily contradictory. Rose's attorney essentially argued that Rose had been nothing more than an accessory after the fact, while Verrill's counsel argued that the government had failed to meet its burden of proof. These theories are not irreconcilable. Even if they were, the level of antagonism in defenses is measured by the evidence actually introduced at trial; argument by counsel is not evidence. *Smith*, 46 F.3d at 1230.

■ Nor did the trial court abuse its discretion in failing to sever the felon-in-possession count. Rose argues that if that count had been severed, the jury would never have known of his status as a convicted felon. He asserts that this information tainted him in the eyes of the jury and resulted in his conviction on the conspiracy count.

The felon-in-possession charge was properly tried with the other charges because it arose out of the same occurrence. Any prejudice was limited because Rose stipulated to his status as a prior convicted felon. Consequently, the government was not permitted to put on evidence concerning the number and nature of Rose's prior felony convictions. *Old Chief v. United States*, — U.S. —, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *United States v. Tavares*, 21 F.3d 1, 4 (1st Cir. 1994) (en banc). Finally, it is improbable that the knowledge of Rose's status as a prior convicted felon led the jury to convict him of the conspiracy charge in light of the acquittal on the two bank robbery charges.

*Other Jury Instructions*

■ Rose also argues that the district court erred by refusing to charge the jury that mere presence at the scene of a crime was not sufficient to convict him on the conspiracy charge. The trial court's failure to give a requested instruction on the defendant's theory of the case is reversible error only if the requested instruction (1) was substantively correct; (2) was not substantially covered elsewhere in the charge; and (3) concerned an important point in the case so that the failure to give the instruction seriously impaired the defendant's ability to present his defense. *United States v. Williams*, 809 F.2d 75, 86 (1st Cir.1986); *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir.1984).

■ Jury instructions are viewed in the context of the charge as a whole rather than in isolation. *United States v. Nickens*, 955 F.2d 112, 119 (1st Cir.1992). Furthermore, the trial court's charge need not use the exact wording requested by the defendant so long as the instruction incorporates the substance of the defendant's request. *United States v. Campbell*, 874 F.2d 838, 844 (1st Cir.1989). Here, the court instructed the jury as follows:

Evidence that the defendant was in the company of, or associated with one or more of the persons alleged, or proved to have become a member of the conspiracy, is not sufficient to prove that such defendant was a member of the alleged conspiracy. Mere similarity of conduct among various persons, and the fact that they may have associated with each other, may have been together and discussed common interests is not sufficient to establish membership in a conspiracy.

In addition, as part of the instruction on aiding and abetting, the jury was explicitly told that mere presence at the scene of the crime, even when coupled with knowledge, was insufficient to sustain a conviction. On these facts, the jury charge substantially cov-

---

**7.** Rose also recalled one of the police officers as a defense witness.

**8.** Furthermore, Rose's claim of prejudice rests on the premise that if Rose had testified, Verrill would have taken the stand to implicate him. This seems improbable, for it would have required Verrill to implicate himself as well.

ered Rose's proposed instruction, and there was no error.

 Rose also contends that the district court's instruction on drawing an inference of guilt from flight from the scene of the crime was incomplete. It is true that the instruction did not explicitly direct the jury to consider other possible inferences. However, the charge did indicate that it was up to the jury to determine whether to draw an inference of guilt from the flight. This conveys the substance of Rose's requested charge. *Williams,* 809 F.2d at 88. Furthermore, a court need only instruct the jury on a defense theory if there is supporting evidence in the record. *United States v. Silvestri,* 790 F.2d 186, 192 (1st Cir.1986). Rose's counsel suggested another possible inference by arguing in closing that Rose's flight was understandable given that he was surrounded by men with drawn weapons. However, no evidence was adduced to this effect. The challenged instruction was a correct statement of the law.

 The final claim Rose makes with respect to the jury instructions is that the district court erred by refusing to give a "missing evidence" instruction. We review for abuse of discretion. *United States v. Welch,* 15 F.3d 1202, 1214 (1st Cir.1993). One of the situations that may warrant such an instruction is when a party with exclusive control over relevant, noncumulative evidence fails to produce that evidence. *Cf. United States v. St. Michael's Credit Union,* 880 F.2d 579, 597 (1st Cir.1989)("missing witness" instruction). Rose argues that the FBI's failure to examine the ammunition clip found on his person for fingerprints justified the missing evidence instruction. However, this was not a case where the government failed to provide readily available evidence. The fingerprint evidence was never collected. Rose's counsel was free to argue that, in the absence of such evidence, the government had not sufficiently linked Rose to the crime. *See United States v. Martinez,* 922 F.2d 914, 925 (1st Cir.1991). There was no abuse of discretion.

### Rose's Sentence

 Rose charges that the district court should not have calculated his base offense level using the guideline for robbery, because he had been acquitted of robbery. Review of the purely legal question of the proper interpretation of a sentencing guideline is *de novo. United States v. Olbres,* 99 F.3d 28, 35 (1st Cir.1996). There is no error here.

 The conspiracy guideline reflects "a policy decision that conspiracies ... be treated like substantive offenses for sentencing purposes." *United States v. Chapdelaine,* 989 F.2d 28, 36 (1st Cir.1993). This question is different from the acquitted conduct question faced by this court in *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989), and in *Lombard,* 72 F.3d at 174. Furthermore, the Supreme Court recently held in *United States v. Watts* that a "jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as the conduct has been proved by a preponderance of the evidence." —— U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997).

### III.

### *Verrill*

Verrill argues that the district court erred in sentencing him as a career offender and as an armed career criminal. Under the guidelines, an individual is considered a career offender if (1) he was at least 18 years old at the time he committed the offense for which he is being sentenced; (2) the offense is a felony and either a crime of violence or a substance abuse crime; and (3) the defendant has at least two prior convictions for crimes of violence and/or substance abuse crimes. U.S.S.G. § 4B1.1. Verrill argues, erroneously, that he does not meet the third requirement.

A crime of violence is defined, in relevant part, as a state or federal offense punishable by more than one year in prison that "is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1)(ii). Verrill's presentenc-

ing report lists ten prior offenses: three instances of entering a dwelling with intent to commit larceny, three instances of breaking and entering, one instance of breaking and entering a dwelling with intent to commit larceny, one instance of breaking and entering with intent to commit larceny, one instance of possession of a stolen vehicle, and one instance of escape. Six of the offenses, at least four of which were clearly crimes of violence, took place during a four month period when Verrill was only eighteen years old. He therefore argues that they should only count as a single offense. Verrill also argues that none of his later offenses (breaking and entering, breaking and entering with intent to commit larceny, possession of a stolen vehicle, and escape) were crimes of violence or involved a controlled substance.

Whether a particular offense qualifies as a predicate offense for career offender purposes is reviewed *de novo*. *United States v. Winter*, 22 F.3d 15, 18 (1st Cir.1994). This court takes a categorical approach and looks to the statutory definitions rather than the particular facts. *Id; see also Taylor v. United States*, 495 U.S. 575, 598, 110 S.Ct. 2143, 2158, 109 L.Ed.2d 607 (1990). It is therefore irrelevant that none of the facts underlying the prior offenses for which Verrill was convicted involved the use of physical force against another. Verrill was convicted of breaking and entering and breaking and entering with intent to commit larceny in violation of R.I. Gen. Laws § 11–8–4. On very similar facts, this court has held that violation of that statute constitutes a crime of violence for career offender purposes. *United States v. Fiore*, 983 F.2d 1, 4–5 (1st Cir.1992). After all, burglars may resort to violence if someone arrives while the burglary is in progress. *United States v. Patterson*, 882 F.2d 595, 604 (1st Cir.1989). Verrill's record shows, apart from his activities when he was eighteen, that he has the requisite two prior convictions to qualify as a career offender.

The district court's calculation of an offense level of 34 is correct if Verrill is either

a career offender or an armed career criminal. Having determined that Verrill was correctly sentenced as a career offender, there is no need to reach the question of whether he also qualified as an armed career criminal. Nor is there a need to reach any of his other sentencing claims.[9]

*Affirmed.*

---

**9.** The district court only addressed these other issues to ensure a complete record in the event that the decision to sentence Verrill as a career offender and armed career criminal was reversed on appeal.