**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

CARMEN BLANCO CRUZ, a/k/a Negra,
a/k/a Mary Diaz Rodriguez, a/k/a

Mary Diaz, a/k/a Milena Espinosa          No. 95-5379
Orozco, a/k/a Maria, a/k/a Maria M.
Vera, a/k/a Maria Vera, a/k/a Ayda
Milena Rivera,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.
                                          No. 95-5380
JORGE SAMUEL CRUZ, a/k/a Ramiro
Alonso Galeano, a/k/a Flaco,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                        No. 95-5643

GLORIA MARGOTH VASQUEZ,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Solomon Blatt, Jr., Senior District Judge.
(CR-93-267)

Argued: March 7, 1997

Decided: April 23, 1997

Before ERVIN, WILKINS, and NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Roy E. Black, LAW OFFICES OF ROY BLACK,
Miami, Florida; Richard John Diaz, RICHARD J. DIAZ, P.A.,
Miami, Florida, for Appellants. Matthew R. Hubbell, Assistant
United
States Attorney, Charleston, South Carolina, for Appellee. **ON
BRIEF:** Sally Gross-Farina, FARINA & GROSS-FARINA, P.A.,
Miami, Florida; Vincent J. Flynn, LAW OFFICES OF VINCENT J.
FLYNN, Miami, Florida; Nathan P. Diamond, LAW OFFICES OF
NATHAN P. DIAMOND, Miami, Florida; Dale T. Cobb, Charleston,
South Carolina, for Appellants. J. Preston Strom, Jr., United
States
Attorney, Ben A. Hagood, Jr., Assistant United States Attorney,
Charleston, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Jorge Samuel Cruz (Jorge), Carmen Blanco Cruz (Carmen), and
Gloria Margoth Vasquez (Vasquez) appeal their convictions and sen-
tences on charges stemming from their efforts to free Jorge from fed-
eral custody. All Appellants allege that the district court erred in

2

admitting transcripts of recorded conversations between Carmen, Vasquez, and a cooperating witness. Additionally, Carmen and Vasquez challenge the manner in which the district court calculated their base offense levels. Finding no error, we affirm.

I.

In 1989, Jorge was incarcerated in a Charleston, South Carolina county jail awaiting sentencing on his convictions for conspiracy to possess with the intent to distribute cocaine, see 21 U.S.C.A. § 846 (West Supp. 1996), and possession with the intent to distribute cocaine, see 21 U.S.C.A. § 841(a) (West 1981). These convictions stemmed from Jorge's role in a scheme to import 502 kilograms of cocaine into the United States through Hilton Head, South Carolina.

In November 1989, Vasquez--a high-ranking member of the Medellin cocaine cartel of Colombia, South America, with whom Jorge was romantically involved--began to develop a plan to free Jorge from prison. She first recruited Robertulio Viana and asked him to locate two "sure shots" to aid in the escape. Viana recruited Hector Ramirez and Pedro Aragon. Viana also enlisted the assistance of Jorge's wife, Carmen, who believed that Viana's male"cousin" was bankrolling the escape attempt. In fact, the "cousin" was Vasquez, but Viana concealed that fact at Vasquez's request.

The conspirators made several trips to Charleston to observe the jail from the exterior, and Jorge made drawings of the interior of the prison and sent them to Carmen. Viana purchased stun guns, mace, and smoke grenades for use during the escape. Also, the conspirators obtained a yellow powder purported to be Scopolamine, a powerful tranquilizer, for the purpose of subduing Jorge's cellmates during the escape attempt. According to the plan ultimately developed for the escape, Viana and Aragon would enter the prison yard at night, open the window of Jorge's cell from the outside, and throw a bag of tools inside. Jorge would use the tools to cut through the bars on the window and would be transported to Miami, Florida, hidden in an automobile driven by Carmen's daughter and a friend.

On February 15, the group gathered in Charleston to carry out the plan. Just before the operation was to begin, however, Vasquez paged

Viana and told him that Jorge's cell had been searched and security tightened. Accordingly, the attempt was canceled. Shortly thereafter, authorities apprehended Viana, Aragon, and others involved in the escape attempt. Vasquez and Carmen were not arrested at that time.

Vasquez hired attorneys for each of the conspirators, hoping to buy their silence concerning her role in the offense. Additionally, Vasquez supported Viana's common-law wife, Yolanda Morot, and her children. Viana, Aragon, and two others involved in the plot were convicted of various offenses and their convictions and sentences were affirmed on appeal. See United States v. Aragon , 983 F.2d 1306 (4th Cir. 1993). Shortly thereafter, Viana agreed to cooperate with the Government in hopes of reducing his sentence. He also encouraged Morot to assist the FBI. Morot permitted the FBI to record her conversations with Vasquez and Carmen. Eventually, over 20 recordings of conversations between Morot, Vasquez, and Carmen were made.

Jorge, Carmen, and Vasquez subsequently were charged with conspiracy to commit offenses against the United States, see 18 U.S.C.A. § 371 (West 1966); escape and assisting escape, see 18 U.S.C. §§ 751(a), 752(a) (1988); obstruction of justice, see 18 U.S.C.A. § 1503 (West 1984); and aiding and abetting interstate travel in aid of a racketeering enterprise, see 18 U.S.C.§ 1952(a)(2) (1988 & Supp. II 1991).

Shortly before Morot was scheduled to testify, she recanted certain statements she had made to the FBI, leading the Government to believe that she had been tampered with and that she would commit perjury if placed on the stand. Accordingly, the Government declined to call Morot as a witness, instead relying on an FBI agent who had assisted in making the recordings to authenticate the transcripts of the recorded conversations between Morot, Vasquez, and Carmen. The transcripts were then introduced into evidence.

All Appellants were convicted of the conspiracy count and the substantive escape counts. In addition, Vasquez and Carmen were found guilty of interstate travel in aid of a racketeering enterprise. However, the jury acquitted all Appellants of obstruction of justice. The district court subsequently imposed sentences of 180 months imprisonment on Vasquez and Carmen and a sentence of 96 months imprisonment

4

on Jorge to be served consecutively to the sentence previously imposed for the narcotics charges.

II.

Pursuant to 18 U.S.C.A. § 2511(2)(c) (West Supp. 1997), "a person acting under color of law" may record a conversation provided "such person is a party to the communication or one of the parties to the communication has given prior consent." 18 U.S.C.A. § 2511(2)(c). Appellants maintain that the transcripts of the recorded conversations between Morot, Vasquez, and Carmen were not admissible because Morot did not voluntarily consent to the recordings. Rather, Appellants assert, Morot was coerced into giving her consent by threats made by Viana.

In support of this contention, Appellants point to a portion of a statement made by Morot shortly before trial in which she averred that she was motivated to cooperate with the FBI because of threats from Viana:

> [I]nitially . . . I was not interested in helping the FBI with regard to my husband, Robert Viana, in his case. My husband soon after called me from [prison] and asked me why would I not cooperate in his case. He told me not to worry and that one of these days he would be getting out of prison. I took this statement to mean that he would one day get out of prison and could someday do something to me, like hit me which he had done on occasions during our marriage. After this conversation, I contacted . . . the FBI.

J.A. 1397. Appellants maintain that this statement conclusively establishes that Morot's consent to the recordings was not voluntary, and hence the recordings were inadmissible. We disagree.

We must consider the totality of the circumstances in determining the voluntariness of a party's consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973); United States v. Tangeman, 30 F.3d 950, 952 (8th Cir. 1994). In deciding whether Morot acted voluntarily, the pertinent question is whether she agreed to the recordings "con-

5

sciously, freely, and independently and not as the result of a coercive overbearing of [her] will" by government officials. <u>United States v. Kelly</u>, 708 F.2d 121, 125 (3d Cir. 1983); <u>see Schneckloth</u>, 412 U.S. at 229. We review for clear error the finding of the district court that Morot voluntarily consented to the recordings. <u>See United States v. Antoon</u>, 933 F.2d 200, 204 (3d Cir. 1991); <u>cf. Ohio v. Robinette</u>, 117 S. Ct. 417, 421 (1996) (noting that voluntariness of consent to search is a question of fact).

We conclude that the record amply supports the determination of the district court that Morot voluntarily consented to the recording of her conversations with Vasquez and Carmen. Before any conversations were recorded, Morot signed two consent forms after government agents read them to her in English and in Spanish and had her read back a portion of the documents to ensure that she understood them. And, throughout the time when conversations were being recorded, Morot repeatedly made suggestions to FBI agents concerning the best means of making the recordings. Furthermore, in the pretrial statement Morot affirmed that she made the tape recordings "voluntarily and of [her] own accord." J.A. 1397. Morot also stated that she understood the consent forms and that "[t]he FBI never pressured [her] into signing the forms nor was[she] ever mistreated by the FBI during [her] cooperation with them." J.A. 1398. This evidence fairly compels a conclusion that Morot consented to the recordings without being coerced to do so by government agents. Furthermore, there simply is no evidence to support an assertion that Viana's "threats" were made at the behest of the government. <u>See United States v. Gonzalez</u>, 71 F.3d 819, 828 (11th Cir. 1996) (explaining that "the absence of official coercion is a <u>sine qua non</u> of effective consent"). And, while fear of Viana may have played some role in Morot's ultimate decision to assist the government, her consent is not thereby rendered involuntary. <u>See Kelly</u>, 708 F.2d at 125 (explaining that an individual's motivation is not a determinative factor in deciding whether that individual voluntarily consented to the recording of a conversation). Accordingly, we conclude that the district court did not commit clear error in finding that Morot voluntarily consented

to
the recordings.

III.

Vasquez and Carmen challenge the manner in which the district court calculated their base offense levels. As noted above, Vasquez and Carmen were convicted of a multi-object conspiracy. See 18 U.S.C.A. § 371. The identified objects of the conspiracy were: (1) to instigate and assist in an escape; (2) to obstruct justice; and (3) to aid and abet interstate travel in aid of a racketeering enterprise.[1] Under the guideline applicable to violations of § 371, the base offense level is established by reference to the guideline for each object offense "plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." U.S. Sentencing Guidelines Manual § 2X1.1(a) (1993); see also U.S.S.G. § 1B1.2(d) (directing that "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit"). Because Vasquez and Carmen refused the offer of a special verdict form on the conspiracy charge, the district court was required to determine, beyond a reasonable doubt, which object offenses Vasquez and Carmen had conspired to commit. See U.S.S.G.§ 1B1.2, comment. (n.5). After briefing and oral argument by the parties, the district court found that they had conspired to obstruct justice. Accordingly, the court applied the guideline for obstruction of justice, U.S.S.G. § 2J1.2.

Vasquez and Carmen assert that by virtue of their acquittal on the substantive obstruction of justice charge, the district court was collaterally estopped from applying the obstruction of justice guideline. This argument fails to recognize that a charge of conspiracy "is separate and distinct from the underlying crime." United States v. Shenberg, 89 F.3d 1461, 1480 (11th Cir. 1996) (internal quotation marks omitted), petition for cert. filed, 65 U.S.L.W. 3468 (U.S. Dec. 23, 1996) (No. 96-1009), and cert. denied, 117 S. Ct. 961 (1997).

_____

[1] The indictment included a fourth object offense, possession with the intent to distribute a controlled substance. The district court refused to submit this object offense and a related substantive count to the jury on the basis that the evidence was insufficient to support them. See

Fed. R.
Crim. P. 29(a).

Moreover, the conspiracy guideline directs that conspiracies are prop-
erly treated as substantive offenses for sentencing purposes. <u>See
United States v. Rose</u>, 104 F.3d 1408, 1417 (1st Cir. 1997). Accord-
ingly, we reject this argument.

IV.

We conclude that the contentions raised by the parties are without
merit. We therefore affirm their convictions and sentences. **2**

<u>AFFIRMED</u>
_____
**2** We have carefully examined Appellants' remaining assertions of
error
and find that they lack merit.

8