<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 97-1827

                         UNITED STATES,

                           Appellee,

                               v.

                        ANTHONY M. SHEA,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF NEW HAMPSHIRE

         [Hon.  Paul J. Barbadoro, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

Wellford, Senior Circuit Judge,

                   and Selya, Circuit Judge.  

                     _____________________

    Albert E. Scherr, for appellant.
    Jean B. Weld, Assistant United States Attorney, with whom
Paul M. Gagnon, United States Attorney, was on brief, for appellee.

                      ____________________

                       November 2, 1998
                      ____________________

   TORRUELLA, Chief Judge.  Defendant Anthony M. Shea
appeals his four-count conviction for attempted armed bank robbery
under 18 U.S.C.  2113(a) and (d), use of a firearm during a crime
of violence in violation of 18 U.S.C.  924(c), being a felon in
possession of a firearm in violation of 18 U.S.C.  922(g)(1), and
two counts of interstate transportation of stolen motor vehicles in
violation of 18 U.S.C.  2312.  Shea was sentenced to 567 months of
imprisonment.  Shea challenges the admissibility of certain
evidence permitted by the district court.  We affirm.  
I.  BACKGROUND
   At approximately 7:00 p.m. on Friday, August 4, 1995,
Sheri Crawford, manager of the Londonderry, New Hampshire branch of
the First New Hampshire Bank, and Tammy Lajoie, a bank teller,  
were closing up the bank when they heard the sound of breaking
glass.  The employees looked up to see two masked robbers wearing
gloves and armed with revolvers.  One of the robbers, who guarded
Crawford, had a "forward, stretched-out neck" and held a shiny,
silver revolver on Crawford throughout the robbery attempt.  The
other robber held a black revolver on Lajoie during the course of
the robbery attempt.  The men demanded all of the money in the bank
but when they learned that Crawford and Lajoie were not able to
open the bank's vault due to a timed locking device and that there
was no money contained in the tellers' stations, they left the bank
empty-handed.   
   The two men exited the bank through the same broken
window through which they had entered.  One of the robbers
apparently cut himself on his way through the broken window, as
bloodstains were discovered inside the bank and in a stolen minivan
believed to have been used as a getaway vehicle.  The police
processed the evidence and transmitted it to the FBI DNA laboratory
for analysis.  After analysis, the FBI concluded that the
defendant's genetic profile matched the genetic profile of some of
the unknown evidentiary samples.  The government introduced this
DNA evidence at trial.
   One week after the attempted Londonderry robbery, Shea
was arrested for another robbery in Wakefield, Massachusetts.  At
the time of his arrest, Shea had in his possession a black, .357
caliber magnum revolver.  The government sought to introduce the
black revolver seized from Shea to prove that he was one of the men
involved in the attempted robbery in Londonderry.   
   At trial, Sheri Crawford described the robber who held a
gun on her during the course of the attempted robbery as "forward-
walking" with a "forward, stretched-out" neck.  She then identified
a photograph of the defendant with the same "leaning forward with
the head and the long neck."  Crawford further testified that the
robber with the "forward, stretched-out" neck held a shiny, silver
revolver.
   Tammy Lajoie testified that the second robber held a
black revolver on her during the course of the attempted robbery.  
Lajoie described the gun as approximately four inches in length.  
When Lajoie was shown the government's exhibit, the black, .357
magnum revolver seized from the defendant, she testified that "it
looked like the gun that was pointed at [her]" during the attempted
robbery.  
   Shea moved to exclude both the DNA evidence and the black
revolver.  After an extensive 5-day evidentiary hearing, the
district court issued a detailed memorandum and order denying
Shea's motion and admitting the DNA evidence.  The district court
also denied Shea's motion to exclude the black revolver.  A jury
convicted Shea of attempted armed bank robbery, use of a firearm
during a crime of violence, and two counts of interstate
transportation of stolen motor vehicles.  He was acquitted on an
additional count of being a felon in possession of a firearm.  The
district court sentenced Shea to 567 months of imprisonment.  Shea
appeals.             
II.  DISCUSSION
   A.  Admission of the Handgun Evidence at Trial
   Shea argues on appeal that the district court erroneously
admitted the black revolver seized from him during his arrest on a
separate charge, one week after the attempted Londonderry robbery.  
Prior to trial, Shea filed a motion to exclude evidence of the
revolver.  The district court denied the motion and ruled the
revolver admissible under Fed. R. Evid. 404(b) "on the issue of
identity."
    We note at the outset that the district court's decision
to admit the gun into evidence as proof of identity under Rule
404(b) is a bit puzzling.  As indicated, Rule 404(b) governs the
admission of extrinsic evidence of "other crimes, wrongs, or acts."  
Here, the government sought to prove that the gun seized from the
defendant was the same gun used in the attempted Londonderry
robbery.  In other words, the government sought to introduce the
gun as intrinsic, direct evidence of the charged crime -- not as
Rule 404(b) evidence.  Because we conclude that the handgun was not
Rule 404(b) evidence at all, we review the district court's
admission of the gun applying a more appropriate Rule 401/403
analysis.
    Rule 401 defines "relevant evidence" as "evidence having
any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or
less probable than it would be without the evidence."  Fed. R.
Evid. 401.  The principal issue at trial, as happens so often in
bank robbery cases, was the identification of Shea as one of the
bank robbers.  Indeed, the government introduced the black revolver
at trial to prove that Shea was one of the Londonderry robbers.   
    In United States v. Roberts, on facts similar to those
presented here, the Seventh Circuit affirmed the district court's
admission of a firearm seized from the defendant during his arrest
two days after the charged offense.  See 933 F.2d at 520.  The
defendant was charged with committing an armed robbery on July 20,
1989.  See id. at 517-18, 518.  Two days after the robbery, the
defendant was arrested while fleeing another robbery attempt.  Seeid. at 518.  During his flight from the police, Roberts either
dropped or threw a blue steel revolver off a rooftop.  See id.  The
Seventh Circuit concluded that "[e]vidence that Roberts was caught
with a dark steel revolver with a brown handle matching the
description of the weapon he used only two days earlier to rob the
. . . bank is directly relevant to the crimes with which he was
charged."  Id. at 520.   
    The Seventh Circuit's reasoning in Roberts applies to the
facts of the present case.  As in Roberts, the proof that upon
arrest Shea had in his possession a black .38 caliber revolver was
"directly relevant" to the crime with which he was charged.  SeeRoberts, 933 F.2d at 520.  As evidence linking Shea to the crime,
possession of the handgun tended to make his participation in the
robbery "more probable . . . than it would be without the
evidence."  Fed. R. Evid. 401.  As the district court explained,
despite testimony that the "forward-walking" robber identified as
Shea held a shiny, silver gun during the course of the attempted
robbery, a jury would still be entitled to infer either that Shea
was in fact the robber in possession of the black revolver during
the course of the robbery or that Shea was not in possession of the
black revolver during the robbery but somehow came into possession
of the gun at some point after the robbery.  We thus proceed to the
Rule 403 analysis.
    Under Rule 403, relevant evidence may be excluded if its
probative value "is substantially outweighed by the danger of
unfair prejudice."  Fed. R. Evid. 403.  The duty of weighing the
probative value of the gun-at-arrest evidence against its
prejudicial effect rested squarely on the shoulders of the trial
judge.  We review a trial court's Rule 403 balancing test for an
abuse of discretion, and only in "extraordinarily compelling
circumstances" will we reverse a district court's "on-the-spot
judgment" concerning the probative value and unfair effect of the
proffered evidence.  United States v. Lewis, 40 F.3d 1325, 1339
(1st Cir. 1994) (quoting United States v. Rodrguez-Estrada, 877
F.2d 153, 155-56 (1st Cir. 1989)).   
    Applying the abuse of discretion standard to the present
case, the district court's admission of the handgun must be upheld.  
The district court carefully considered arguments of counsel and
weighed the competing interests before admitting the evidence of
Shea's possession of the black revolver upon arrest.  Although
there were competing considerations, it was neither unreasonable
nor arbitrary to conclude that a probative inference could
reasonably be drawn from the evidence which outweighed its
prejudicial effect.  Moreover, the district judge was in a superior
position to evaluate the testimony of the two bank employees as
well as the other incriminating evidence against Shea.  Finally,
the district judge took positive steps to minimize the potential
impact of the evidence by carefully instructing the jury that the
gun was introduced for a limited purpose only.  Under these
circumstances, we hold that the district judge did not abuse his
discretion in concluding that the Rule 403 balance weighed in favor
of admitting the gun.     
    Even if the district court erred in admitting the gun
into evidence, we would conclude that such error was harmless.  
"[A] non-constitutional evidentiary issue will be treated as
harmless if it is highly probable that the error did not contribute
to the verdict."  United States v. Rose, 104 F.3d 1408, 1414 (1st
Cir. 1997), cert. denied, 117 S. Ct. 2424 (1997).  In a harmless
error inquiry, the government bears the burden of persuasion with
respect to showing that the error was harmless.   See id.  Although
the government here failed to argue that the district court's
admission of the gun, if error, was harmless, this Court has
recently held that appellate courts have the discretion on direct
appeal to overlook the government's failure to argue harmless error
and consider the issue of harmlessness sua sponte.  See id.
    We exercise our discretion to consider the issue of
harmlessness mostra sponte.  Here, we find that the evidence
admitted was plainly harmless.  The gun was cumulative, and the
weight of the additional evidence overwhelming.  The additional
evidence presented at trial consisted of: (1) DNA evidence
establishing that the defendant's blood matched blood taken from a
vertical blind at the bank and from three locations within the
getaway vehicle; (2) the testimony of an FBI forensic scientist
that the probability of a random DNA match was between 1 in 20,000
and 1 in 2,000,000; (3) Shea's statement to James Tracy, an
associate of the defendant, that "[I]f blood's enough to convict,
I'm screwed."; (4) Sheri Crawford's physical description of one of
the robbers which closely matched Shea's appearance and; (5) the
testimony of a nursing assistant identifying a photograph of Shea
as the man she treated for sutures on a number of hand lacerations
several hours following the charged attempted robbery.  Under such
circumstances, it would be a waste of judicial resources to require
a new trial where the result would almost certainly be the same.  
See United States v. Rose, 104 F.3d at 1414.  
    B.  Admission of the DNA Evidence
    At trial, the government presented expert testimony
comparing Shea's DNA with DNA extracted from several of the
bloodstains discovered inside the Londonderry bank and in a stolen
minivan believed to have been used as the getaway vehicle.  The
government's expert, a forensic scientist employed by the FBI, used
a method of DNA analysis known as Polymerase Chain Reaction
("PCR"), in determining that Shea had the same DNA profile as the
person who left the bloodstains at the crime scene and in the
getaway vehicle.  Shea opposes the admission of the FBI's DNA
evidence on the ground that the FBI's PCR method is unreliable
science.  In addition, Shea argues that evidence of a random match
probability is barred by Rule 403 because the risk that the jury
would be misled by the evidence substantially outweighs its
probative value.   
    We review a district court's decision to admit DNA
evidence for abuse of discretion.  See United States v. Lowe, 145
F.3d 45, 50-51 (1st Cir. 1998).  We hold that the district court
did not abuse its discretion in admitting the FBI's PCR evidence.  
We affirm the district court's admission of the DNA evidence on the
grounds stated in the district court's well-written memorandum and
order on this issue.  See United States v. Shea, 957 F. Supp. 331
(D.N.H. 1997).
III.  CONCLUSION
    For the foregoing reasons, the defendant's conviction is
affirmed.

</body>

</html>