# United States Court of Appeals
## For the First Circuit

No. 15-1574

UNITED STATES OF AMERICA,

Appellee,

v.

MIGDOEL BERRÍOS-BONILLA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Lipez, Circuit Judges.

Rafael F. Castro-Lang, for appellant.
Nicholas Warren Cannon, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for appellee.

May 13, 2016

**TORRUELLA**, **Circuit Judge**.  The police found a machinegun under the passenger seat of a truck belonging to defendant-appellant Migdoel Berríos-Bonilla ("Berríos").  After fleeing the scene of the crime, Berríos contacted one of the individuals who had been in the car with him and told her to lie about knowing him.  Berríos eventually turned himself in and a jury convicted Berríos for two weapons possession counts under 18 U.S.C. § 922, subsections (g)(1) and (o)(1), as well as witness tampering in violation of 18 U.S.C. § 1512(b)(1).  Appealing from the United States District Court for the District of Puerto Rico, Berríos challenges the sufficiency of the evidence supporting his convictions and alleges several procedural errors.  Unconvinced by Berríos's arguments, we affirm.

## I.  Background

On the night of August 16, 2014, Berríos lent his Ford pickup truck to Rolando Torres-Fernández ("Torres").  Torres picked up five other men and met up with María Rivera-Mulero ("Rivera") and Verónica Álamo-Gómez ("Álamo") at a bridge.  Accompanied by the five unidentified males, Torres drove Berríos's truck to a bar to meet Berríos, while Rivera and Álamo followed in Rivera's car.

Berríos, Torres, Rivera, Álamo, and two of the unidentified men left and drove in Berríos's truck to a second

bar.  At the second bar, Berríos and Álamo danced and Álamo felt something hard around the back of Berríos's waist although she could not tell what it was.  The group then left the bar to go to a restaurant.  After eating, the two unidentified men (who had been sitting in the front driver and passenger seats) were dropped off.

Torres drove the remaining members of the group to a motel: Rivera was in the front passenger seat, Berríos sat behind the driver seat, and Álamo sat behind the passenger seat.  Once they arrived at the motel, Torres exited and began talking to a motel employee while Berríos, Álamo, and Rivera waited in the car. Berríos left the truck when he noticed Torres and the motel employee arguing.  Berríos asked Torres what he was doing and said they should leave.  The group drove away from the motel (sitting in the same seats of the car as before), but the motel employee called the police to report the incident[1] and gave a description of Berríos's truck.

Three Puerto Rico Police Department officers responded to the call. The officers spotted a truck matching the dispatcher's description and followed it until it stopped in front of a

---

[1]  Although not directly discussed at Berríos's trial, Torres was charged with assault and robbery for the events that occurred at the motel.

-3-

restaurant.  Álamo had spilled food on herself and exited the truck from the rear passenger-side door to clean up.  One of the officers, Ángel Hernández-Nieves ("Officer Hernández"), exited the police car and began approaching the truck.  As Officer Hernández neared, he saw Berríos stick his head out of the open rear passenger-side door and look around.  Officer Hernández then announced himself and told everyone to exit the vehicle.  Berríos fled, exiting from the rear driver-side door.  Officer Hernández pursued Berríos but was unable to catch him.

Álamo, Rivera, and Torres remained at the scene.  A second officer asked Torres to exit the vehicle and stand at the back of the truck on the passenger side.  At that point, the officer noticed through the open rear passenger-side door a firearm sticking out from underneath the passenger seat.  Upon further examination, the police concluded it was a Glock pistol modified to shoot automatically.  The police subsequently searched Berríos's truck and found two magazines under the same seat as the pistol, Berríos's driver's license inside a pocket on the rear passenger-side door, and a cellphone inside a pocket on the rear driver-side door.  They arrested Álamo, Rivera, and Torres.

Álamo was released and subsequently spoke with Berríos twice over the phone.  In one conversation, Berríos told Álamo "[t]hat if [she] was asked about him [she] should say [she] didn't

know who he was" and that "everything is [Torres], is from him." Berríos eventually turned himself in to the police on August 25, 2014.

Berríos was charged with possession of a firearm by a prohibited person and possession of a machinegun as well as witness tampering. A jury found Berríos guilty on all counts. This timely appeal followed.

## II. Sufficiency Claims

Berríos first argues that the Government presented insufficient evidence to convict him on all three counts. This court "review[s] the sufficiency of the evidence for a conviction de novo," drawing "all reasonable inferences in the light most favorable to the prosecution." United States v. Rosado-Pérez, 605 F.3d 48, 52 (1st Cir. 2010). We conclude Berríos has failed to meet this rigorous standard.

### A. Weapons Charges

Berríos stipulated to all but the knowledge element of his weapons possession charges.[2] He argues, as he did at trial,

---

[2] 18 U.S.C. § 922(g)(1) makes it unlawful

> for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

that the Government failed to prove beyond a reasonable doubt that he knowingly possessed the machinegun found in his vehicle.

"Knowing possession of a firearm may be proved through either actual or constructive possession." United States v. Williams, 717 F.3d 35, 39 (1st Cir. 2013). An individual constructively possesses something when he or she "knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir. 1992) (quoting United States v. Lamare, 711 F.2d 3, 5 (1st Cir. 1983)). A jury may infer knowledge from circumstantial evidence. United States v. Ridolfi, 768 F.3d 57, 62 (1st Cir. 2014). "For constructive possession of a firearm in particular, the requisite knowledge and intention can be inferred from circumstances 'such as a defendant's control over the area where the contraband is found . . . .'" Id. (quoting United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005)). In such a case, the record "must contain evidence of 'some action, some word, or some conduct that links the individual to the [firearm] and indicates that he had

---

18 U.S.C. § 922(o)(1) makes it "unlawful for any person to transfer or possess a machinegun" subject to certain exceptions not relevant here.

some stake in it, some power over it.'"  Id. (alteration in original) (quoting McLean, 409 F.3d at 501).

Contrary to Berríos's arguments, the Government did not rely on his mere proximity to the weapon to prove possession. Rather, it presented strong circumstantial evidence connecting Berríos to the machinegun and ruling out the other potential sources of the weapon.  Drawing all inferences in the light most favorable to the prosecution, the timeline of events unfolded as follows: the police pulled up behind Berríos's vehicle; Álamo exited the car from the rear passenger-side door; Berríos stuck his head out the rear passenger-side door to look around; Berríos saw Officer Hernández; and Berríos ran out the rear driver-side door.  This sequence of events places Berríos as the last person to occupy the rear passenger seat, close to where the police found the machinegun.  Moreover, the Government presented additional evidence connecting Berríos to the rear passenger seat, including that his driver's license was in a pocket inside the rear passenger side door.  A reasonable jury could accept this testimony and conclude that Berríos saw the police, became worried about them finding the machinegun on his person, and placed it in the most convenient hiding place inside the car before he fled.

This conclusion is further strengthened by two observations made by Álamo: (1) that she felt an unidentified hard

object around the back of Berríos's waist earlier that night and (2) that she had not seen the machinegun until her arrest. Álamo sat in the rear passenger seat two times before the gun was discovered -- on the drive from the second bar to the restaurant and from the restaurant to the truck's ultimate stopping place. The police testified (and the trial exhibits -- photographs of the truck's interior -- show) that the machinegun was not fully under the passenger seat, but sticking out part of the way. The fact Álamo did not notice the machinegun earlier strongly suggests it was not under the passenger seat until she exited the vehicle and Berríos sat there. This, in turn, helps rule out any of the unidentified men or Torres and Rivera (who were sitting in the front seats) as the machinegun's owner.

We also note that the Government presented evidence of Berríos's consciousness of guilt. Berríos argues that he fled because he was on probation and did not want to be associated with Torres's actions at the motel. We reject Berríos's contention that an innocent explanation was equally as likely as a guilty one in light of the above-mentioned evidence. See Bourjaily v. United States, 483 U.S. 171, 179-80 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it."). We also note that Berríos's subsequent

attempt to have Álamo deny knowing him further strengthens the inference that Berríos was conscious of his guilt.

Finally, we reject Berríos's argument that the numerousness of the truck's occupants created a reasonable doubt as to who placed the machinegun under the passenger seat. The Government presented evidence that the machinegun did not belong to Torres because another firearm was found under the driver's seat. As we previously stated, the timeline of events creates a reasonable inference that the machinegun was not under the passenger seat before the police arrived and was likely placed there by Berríos. We also find it dubious that those men would have left the machinegun there after they were dropped off. "[F]actfinders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings," United States v. Ortiz, 996 F.2d 707, 712 (1st Cir. 1992), and people are generally not inclined to forget or store machineguns in cars that do not belong to them. Despite the truck's numerous occupants, a reasonable jury could have concluded that Berríos placed the machinegun under the passenger seat and convicted him of both weapons possession offenses.

## B.  Witness Tampering

We turn now to Berríos's witness tampering conviction. To convict Berríos of witness tampering, the jury needed to find that Berríos "corruptly persuade[d] another person, or attempt[ed] to do so, . . . with intent to influence, delay, or prevent the testimony of any person in an official proceeding [or] cause or induce any person to withhold testimony."  18 U.S.C. § 1512(b).

Berríos does not contend that calling Álamo and asking her to tell the police that she did not know him would not qualify as witness tampering.  He argues only that the jury should not have believed Álamo's testimony based on her failure to mention him asking her to lie in an earlier interview with a federal agent and that it was implausible that he told Álamo to lie but not Rivera (the latter of whom did not testify).  These arguments go to Álamo's credibility as a witness and "it is not the appellate court's function to weigh the evidence or make credibility judgments."  Ortiz, 966 F.2d at 711.  Viewing Álamo's testimony "in the light most favorable to the prosecution," a reasonable jury could have concluded that Berríos spoke to her and attempted to influence her testimony.  Rosado-Pérez, 605 F.3d at 52.  Thus, we affirm on this charge as well.

-10-

### III. <u>Motion to Play Tape</u>

In addition to his sufficiency challenge, Berríos also claims that the trial court impaired his right to cross-examination. Specifically, Berríos argues that the district court should have allowed him to introduce an audio recording of a September 2, 2014, interview between Álamo and a federal agent as impeachment evidence. During this interview, Álamo did not mention that Berríos had told her to lie about knowing him. Berríos sought to use this omission to impeach Álamo's credibility and moved to admit excerpts of an audio recording of the interview (which was in Spanish) and a translated transcript during his cross-examination. After listening to the tape, the district court determined that Berríos could show Álamo the interview transcript whenever she made contradictory statements and ask her if the transcript showed she told the federal agent something different. Nonetheless, the district court ruled against playing the tape.

"The Sixth Amendment protects a defendant's right to effective cross-examination of key adverse witnesses." <u>United States</u> v. <u>Martínez-Vives</u>, 475 F.3d 48, 53 (1st Cir. 2007). We engage in a two-step review in evaluating challenges to a trial court's limitation of a cross-examination.[3] <u>Id.</u> First, we review

---

[3] For purposes of review we assume, without deciding, that

-11-

de novo to "determine whether [the] defendant 'was afforded a reasonable opportunity to impeach adverse witnesses' consistent with the Confrontation Clause."  Id. (quoting United States v. Callipari, 368 F.3d 22, 36 (1st Cir. 2004), vacated and remanded on other grounds, 543 U.S. 1098 (2005)).  If that threshold is met, we review the specific limitation imposed by the trial court on the defendant's cross-examination for an abuse of discretion. Id.  Trial courts may restrict cross-examination to prevent "undue prejudice, confusion of the issues, witness badgering, redundancy, or questioning that appears to be of marginal relevance." United States v. Vega-Molina, 407 F.3d 511, 523 (1st Cir. 2005).

Under step one of this analysis, Berríos was afforded a reasonable opportunity to impeach Álamo on cross-examination. Berríos asked Álamo if she mentioned Berríos's request for her to lie to the federal agent who interviewed her on September 2.  After being shown the interview transcript, Álamo stated she had not. There is no doubt that Berríos was able to impeach Álamo and Berríos does not argue otherwise.  Rather, he argues only that his ability to do so was limited because he was not able to play the tape.  This claim we review only for abuse of discretion.

Berríos's claim was adequately preserved.

-12-

We do not believe the district court abused its discretion in light of the specific request Berríos made. Berríos did not ask the district court to play the entire tape or to play the tape in a manner similar to how the transcript was used (i.e., playing short snippets and asking Álamo if her testimony was different from what she said on the tape). Rather, he asked the district court to play the portion of the interview relating to the obstruction charge. Berríos argues that the district court should have allowed him to play the tape of the interview because it was important for the jury to hear Álamo's tone to judge her credibility -- specifically, to hear that Álamo was not afraid and withholding information out of fear. Even assuming that hearing Álamo's tone could have been helpful for the jury, we think the district court properly balanced this interest against the Government's valid hearsay objections and its own concerns about completeness. The Government's motion stated that it opposed the district court playing only the parts of the tape that "contain[ed] self-serving hearsay" -- namely Berríos proclaiming his innocence to Álamo. Berríos fails to cite an evidentiary rule under which these statements would have been admissible. Moreover, we note that Berríos requested that the district court not play the entire tape because Álamo also made statements that suggested she was afraid of Berríos during the interview. The district court also

expressed concern that playing only Berríos's requested portion of the tape would prejudice the Government. Given these concerns, the district court properly weighed the potential for jury confusion and prejudicial impact in denying Berríos's motion to play the tape.

Berríos argues this holding would contradict our decision in United States v. Meises, 645 F.3d 5 (1st Cir. 2011). It is true that in Meises we expressed concerns about the jury's ability to assess witness credibility based on a district court's decision to not play an audio tape. Id. at 25-26. Meises, however, involved a dispute between the defendant and the government about why incriminatory statements allegedly made by the defendant (as testified to by a confidential informant) could not be heard on the taped conversation -- the government argued the statements were inaudible due to malfunctioning recording equipment while the defendant argued he never said them. Id. We viewed the quality of the audio recording as potentially important to the defendant's ability to respond to the government's argument. Id. In other words, Meises involved a dispute about the recording itself. Berríos's case does not involve such a dispute. Thus, the helpfulness of the tape itself was less, and in light of the concerns noted by the district court, the potential for jury

confusion and prejudice was higher.  We find no abuse of discretion.[4]

### IV.  Jury Instructions

Finally, Berríos contends that the district court's jury instructions contained two errors.  The parties disagree over how to view Berríos's claims and the corresponding standard of review. Berríos frames the district court's decisions as refusals to give a requested instruction, which we review de novo.  See United States v. Baird, 712 F.3d 623, 627-28 (1st Cir. 2013).  The Government, however, argues that the district court gave Berríos's requested instruction and his arguments concern the district court's phrasing, which we review for abuse of discretion.  See id. at 628.  Because Berríos's challenge fails even if we apply the standard of review most favorable to him, we assume without deciding that the district court refused his requested instruction and our review is de novo.  See United States v. Rivera-González, 809 F.3d 706, 710 (1st Cir. 2016).

In determining whether a district court's refusal to give a jury instruction is reversible error, "we look to see

---

[4]  In passing, Berríos argues hearing Álamo's tone during her interview was relevant evidence improperly excluded by the district court.  We deem this argument waived for lack of development. Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

whether the requested instruction was '(1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case.'" United States v. Duval, 496 F.3d 64, 77 (1st Cir. 2007) (quoting White v. N.H. Dep't of Corr., 221 F.3d 254, 263 (1st Cir. 2000)). Neither of Berríos's claims pass this test.

## A.  "Constructive Possession" Instruction

First, Berríos claims that the district court should have instructed the jury that "the mere fact that the firearm was found in the defendant's vehicle is insufficient by itself to establish actual or constructive possession." Without this instruction, Berríos perceives a risk that the jury concluded he possessed the machinegun merely because it was found in his truck.

We agree with the Government that Berríos's claim fails because his proposed instruction was substantially incorporated into the instructions the district court gave. This court's decision in United States v. Duval is particularly instructive. In that case, we found no reversible error where the trial court refused to instruct the jury that "knowledge alone . . . [or] mere presence in the vicinity of the object is insufficient to prove possession." Duval, 496 F.3d at 77. The instructions explained that (1) constructive possession included both the "power and intention to exercise control or domination and control over

-16-

something" and (2) the jury needed to find that the defendant "knowingly possessed the firearms." Id. at 78. We viewed these instructions as sufficient to prevent the jury from "convict[ing] based on [the defendant's] mere knowledge of the firearms." Id.

The district court's instructions in Berríos's case cleared this threshold. As in Duval, the district court defined constructive possession as when a person "has both the power and the intention to exercise control over something" and instructed that the jury needed to find that Berríos "knowingly associated himself with the crime charged." Moreover, the district court told the jury that "[m]erely being present at the scene of a crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct to find" guilt. The district court's instructions "plainly instructed [the jury] that it needed to find knowing possession" and did not allow the jury to find Berríos guilty based simply on his ownership of and presence in the vehicle in which the machinegun was found. Id.[5]

---

[5] Berríos makes two additional arguments that we can quickly dismiss. First, Berríos argues the risk that the jury convicted him based on his ownership of the truck was compounded by the district court explaining actual possession to the jury by saying "I am in possession of a cell phone right now, and a pen in my pocket, in my shirt. That's actual possession." The district court preceded this statement by defining actual possession as requiring "direct physical control." This remark did not invite the jury to conflate actual possession with ownership.

Second, Berríos argues that the district court's failure to

-17-

## B. "Weaker or Less Satisfactory Evidence" Instruction

Next, Berríos argues that the district court should have instructed the jury that "[i]f a party offers weaker or less satisfactory evidence when stronger and more satisfactory evidence should have been produced at trial, you may, but are not required to, consider this fact in your deliberation." Berríos views this instruction as important to two types of evidence the Government failed to produce. First, Berríos argues that if the jury had been given this instruction, it would have been able to draw an inference in his favor based on the Government's failure to have the machinegun tested for his fingerprints. Second, Berríos argues that the jury would have drawn an inference in his favor from the Government's failure to present Rivera as a witness.

This claim also falters because Berríos's proposed instruction was already substantially incorporated into the charge as rendered. The district court told the jury that "[a] reasonable doubt may arise not only from the evidence presented, or produced,

---

give his requested instruction was particularly prejudicial because "[t]he prosecutor during his closing argument requested the jury find [Berríos] guilty because the vehicle belonged to him so they could infer [the machinegun] was his." Although the prosecutor noted Berríos's ownership of the truck, the focus of his argument was on placing Berríos in the rear passenger seat right before the machinegun was discovered. The prosecutor did not invite the jury to convict Berríos solely based on his ownership of the truck.

but also from a <u>lack of evidence</u>." (Emphasis added).  Based on this instruction, we fail to see how the jury was prevented from understanding that it could find a reasonable doubt based on the lack of fingerprint evidence connecting Berríos to the machinegun or corroborating testimony from Rivera.

Our conclusion is further bolstered by our case law regarding "missing evidence" instructions.  Such instructions tell the jury that it may draw an adverse inference "when a party has exclusive control over relevant, noncumulative evidence," yet fails to produce it.  <u>United States</u> v. <u>Rose</u>, 104 F.3d 1408, 1417 (1st Cir. 1997); <u>see also</u> <u>United States</u> v. <u>St. Michael's Credit Union</u>, 880 F.2d 579, 597-98 (1st Cir. 1989) (describing "missing witness" instruction).  In <u>United States</u> v. <u>Rose</u>, we concluded a district court did not commit reversible error by declining to give such an instruction based on the government's failure to collect fingerprints on evidence in its possession.  <u>Rose</u>, 104 F.3d at 1408.  This instruction, in our view, was unnecessary because the defendant's counsel was "free to argue that, in the absence of [fingerprint evidence], the government had not sufficiently linked [the defendant] to the crime."  <u>Id.</u>  Here, Berríos did in fact argue that the Government's case was full of holes due to its failure to produce fingerprints or Rivera's

testimony.  We thus view Berríos's requested instruction as unnecessary and find no reversible error.[6]

## V.  Conclusion

For the foregoing reasons, we affirm Berríos's convictions.

**Affirmed**.

---

[6]  Berríos also argues we should reverse for cumulative error. Finding no errors, we decline. United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997) ("[C]umulative-error analysis is inappropriate when a party complains of the cumulative effect of non-errors.").