FILED
United States Court of Appeals
Tenth Circuit

February 27, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN MICHAEL JOHN,

    Defendant - Appellant.

No. 15-2178

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:13-CR-02730-MV-1)**
_____

Michael Keefe, Assistant Federal Public Defender, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Jennifer M. Rozzoni, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with her on the brief), Office of the United States Attorney, Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **HARTZ**, **MURPHY**, and **HOLMES**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Following a jury trial in the United States District Court for the District of New Mexico, Defendant Steven John was convicted on one count of attempted aggravated sexual abuse in Indian country, *see* 18 U.S.C. §§ 1153(a), 2241(a)(1), and 2246(2)(B),

and one count of abusive sexual contact in Indian country, *see* 18 U.S.C. §§ 1153(a), 2244(a)(2), and 2246(3). On appeal Defendant argues (1) that the district court violated his Sixth Amendment right to confrontation and his right to present a complete defense by restricting his cross-examination of the victim, (2) that several of the jury instructions regarding assessment of the evidence were improper, and (3) that the district court should have instructed the jury on the lesser-included offense of simple assault. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Defendant and the victim are relatives. At trial the victim testified as follows about an incident at her home on July 18, 2013: She was showering when she heard knocking on her front door. She put on some clothes, opened the door, and saw Defendant. He asked for his sunglasses, but she told him that her niece had broken them. She closed the door on him and locked it before returning to the shower. Not long afterwards she noticed a shadow near the shower door. She cracked the shower door open and saw Defendant undressing. She asked him what he was doing. Continuing to take his clothes off, he answered, "I'm taking a shower." R., Vol. 4 at 174. She tried to get out of the shower—stepping onto the toilet and grabbing a towel hanging on the shower door. Defendant came toward her, and a struggle ensued while both were naked. Despite her pleas to be left alone and for him to get out, Defendant grabbed the towel away from her and pulled her head toward his "private area." *Id.* at 177–78. She made her way to the bathroom door to try to escape, but Defendant pulled her back toward the shower. Although she elbowed him, he got his hands around her stomach and then across

2

her chest. She eventually was able to push Defendant down into the shower, grabbed her cell phone, got a blanket in the living room to cover herself, and ran outside, where she called the police.

Officers arrived after Defendant had left. They found the shower door tilted, the bathroom trashcan turned over, and the victim's menstrual blood smeared on the floor. No forensic testing was conducted.

## II.  DISCUSSION

### A.  Victim Cross-Examination

At trial Defendant wanted to cross-examine the victim about her being placed in inpatient treatment at a Phoenix behavioral-health facility four months before the assault. The district court disallowed this line of questioning. Defendant challenges the court's ruling, relying on the Confrontation Clause of the Sixth Amendment and the right to present a complete defense under the Fifth and Sixth Amendments.

We summarize what we know of the Phoenix incident from police reports and hospital records presented to the district court: In March 2013 the victim visited her sister in Phoenix. She alleged that her sister pressured her to drink alcohol, they argued, and the victim grabbed a knife and tried to cut her wrists, making superficial cuts. She was taken to the hospital. After she told the medical staff that she had been having suicidal thoughts for two years, she was transferred to an inpatient behavioral-health unit. During intake she denied using any illicit substances, despite having told the emergency-department staff that she used marijuana. The intake notes characterized the victim as having immature judgment, marked impulsivity, an evasive attitude, and a severely

3

limited fund of knowledge. Staff determined that she had a mood disorder and needed psychotherapy. Defendant's brief asserts that the victim was prescribed medication when she was checked out. But the discharge summary says that no medication was needed.

The victim's sister denied to police that she had given the victim any alcohol or coerced her to drink. Because the police could not determine whether the victim got the alcohol herself or it came from her sister, they closed the case.

Defendant argues that the Phoenix incident sheds light on the accusations against him because it makes sense that the victim would falsely accuse him of sexual assault given the "earlier poorly controlled behavior, continued drug use, and . . . documented psychological disorder" revealed by that incident. Aplt. Br. at 28. He says that her condition had led her to falsely accuse a family member in Phoenix and that she did it again to him. He contends that the Phoenix incident shows her "propensity to lie" and her diminished capacity to "observe, remember[,] or narrate," *id.* at 18 (internal quotation marks omitted), which resulted from her "drug use" and "impulsive behavior," *id.* at 21–22. And he concludes that testimony on this incident, in light of the lack of physical evidence and the evidence of the victim's "ongoing substance abuse," may have led the jury to draw "vital inferences" in his favor. *Id.* at 20.

Much of this argument is not properly before us on appeal. At trial the only reason his counsel gave for wanting to question the victim on the Phoenix incident was to show that she had an impaired "ability to perceive events, to relate those events, to narrate those events, to remember those things." R., Vol. 4 at 33. Counsel failed to argue that he should be able to use the incident to impeach her veracity on cross-examination,

4

even after the prosecutor brought up Fed. R. Evid. 608(b), which allows cross-examination regarding "specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." Indeed, counsel rejected the possibility, saying, "Rule 608 deals with truthfulness or untruthfulness—character for truthfulness or untruthfulness, and that's not what we're pointing to in this, so I don't think Rule 608 applies at all." R., Vol 4 at 37. This was an "intentional relinquishment or abandonment of a known right," *United States v. Olano*, 507 U.S. 725, 733 (1993), which precludes Defendant from arguing on appeal that he should have been permitted to cross-examine the victim to challenge her veracity based on the Phoenix incident, *see id.* at 732–33; *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009).

There remains only the argument that Defendant should have been allowed to cross-examine the victim on the Phoenix incident because it cast doubt on her ability to perceive, remember, and narrate events. He does not rely on the Rules of Evidence but rather raises a constitutional challenge. He argues that "[b]y unduly restricting [his] cross-examination of [the victim], the district court violated his Sixth Amendment right to confrontation and his right to present a complete defense." Aplt. Br. at 13.

The right to cross-examine witnesses in a criminal trial is an essential part of the right to confront witnesses enshrined in the Confrontation Clause of the Sixth Amendment. *See Davis v. Alaska*, 415 U.S. 308, 315–16 (1974). But that right is not unlimited. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)

(internal quotation marks omitted). "[T]rial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

As for the constitutional right to present a complete defense, it does not change the analysis on this appeal. In general, "the right to present a defense . . . is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967). In other words, a defendant has "the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). In the specific context of cross-examination, however, this due-process right amounts to no more than the right to cross-examine contained in the Confrontation Clause. *See id.* at 294–95.

A long line of this circuit's opinions states that we review de novo all Confrontation Clause challenges to restrictions on cross-examination. *See, e.g.*, *United States v. Geames*, 427 F.3d 1333, 1337 (10th Cir. 2005); *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998); *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998). De novo review, of course, implies that there is only one correct ruling, leaving the trial judge with no discretion. But the Supreme Court has said that the Confrontation Clause leaves "trial judges . . . wide latitude . . . to impose reasonable limits on . . . cross-examination." *Delaware*, 475 U.S. at 679. As a result, some circuits review only for abuse of discretion in this circumstance. *See, e.g.*, *United States v. Smith*, 451 F.3d 209, 220 (4th Cir. 2006); *United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011). Others review de novo whether the trial judge has properly excluded an entire line of inquiry but

6

review more specific limitations for an abuse of discretion. *See, e.g.*, *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007) (en banc); *United States v. Berrios-Bonilla*, 822 F.3d 25, 31 (1st Cir. 2016) ("We engage in a two-step review in evaluating challenges to a trial court's limitation of a cross-examination. First, we review de novo to determine whether the defendant was afforded a reasonable opportunity to impeach adverse witnesses consistent with the Confrontation Clause. If that threshold is met, we review the specific limitation imposed by the trial court on the defendant's cross-examination for an abuse of discretion." (brackets, citations, footnote, and internal quotation marks omitted)). At some point it may be appropriate to reexamine our standard of review. But for now we are bound to review de novo, and the standard of review does not affect the result here.

We see no violation of Defendant's Sixth Amendment right to cross-examine witnesses. The problem for Defendant is that the Phoenix incident is not even "marginally relevant," *Delaware*, 475 U.S. at 679, to the victim's ability to perceive, remember, or relate the shower incident. It does not show that the victim was under the influence of any drugs or alcohol on the day of the shower incident or at trial that would have prevented her from perceiving, remembering, or relating events. Nor does it show that she suffered from some mental condition that rendered her unable to perceive, remember, or relate. No lay person could draw that inference and, as the district court noted, the defense did not have an expert witness who drew the inference.

7

## B. Jury Instructions on Assessing the Evidence

Defendant next challenges three jury instructions—Instructions 9, 10, and 16—that concerned assessment of the evidence. We review for abuse of discretion a district court's decision to give a particular jury instruction. *See United States v. Williamson*, 746 F.3d 987, 990 (10th Cir. 2014). "In order to assess whether the court properly exercised its discretion, we review the jury instructions de novo to determine whether, as a whole, they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Faust,* 795 F.3d 1243, 1251 (10th Cir. 2015 (internal quotation marks omitted). As a general rule, instructions on how to assess evidence are particularly matters of trial-court discretion, because they are directed to guiding the jurors' common sense in the context of the case rather than informing them of the governing law.

### 1. Instruction 9

Instruction 9 stated: "The testimony of the complaining witness need not be corroborated if the jury believes the complaining witness beyond a reasonable doubt." R., Vol. 1 at 95. Defendant argues that this instruction "does not accurately reflect the government's burden," because the jury must find each element of the charged offenses beyond a reasonable doubt and "[b]elieving only one witness beyond a reasonable doubt is neither necessary or sufficient." Aplt. Br. at 32. He contends that because his defense rested solely on the lack of corroboration of the victim's account, the instruction "wiped out the primary thrust" of his defense. *Id.* at 35. He also complains that the instruction was "confounding" because it "demanded special attention for the complaining witness,"

8

contrary to another instruction that told the jury not to "'give special attention to any one instruction.'" Aplt. Br. at 32 (quoting R., Vol. 1 at 87).

The district court did not abuse its discretion by giving this instruction. The instruction did not mislead the jurors, and there was no reasonable chance that it confused them. Although it (properly) informed the jurors that it could convict on the basis of the testimony of a single witness, it did not say that they had to believe the victim. If there were any doubt, a separate instruction made it clear that the victim could be disbelieved. Instruction 8 told the jurors that they were "the sole judges of the credibility or 'believability' of each witness and the weight to be given to the witness's testimony," and it gave them guidance on how to assess the credibility of *all* witnesses. R., Vol. 1 at 93.[1]

---

[1] This paragraph of Instruction 8 stated in full:

> You are the sole judges of the credibility or 'believability' of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he/she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

R., Vol. 1 at 93.

Further, nothing prevented or undermined an argument by defense counsel that the lack of corroboration prevented belief beyond a reasonable doubt. And, of course, the jurors were told that they could not convict unless they found each element of each offense beyond a reasonable doubt. Viewing the instructions as a whole, we do not think that Instruction 9 conveyed a message that the victim was especially credible. *See People of the Territory of Guam v. McGravey*, 14 F.3d 1344, 1345–47 (9th Cir. 1994) (approving same instruction in sexual-assault case when instruction akin to Instruction 8 was given). We reject Defendant's challenge.

## 2. Instruction 10

Instruction 10 stated: "An attorney has the right to interview a witness for the purpose of learning what testimony the witness will give. The fact that a witness has talked to an attorney does not reflect adversely on the truth of such testimony." R., Vol. 1 at 96. At trial, Defendant cross-examined the victim on her meetings with the prosecutor to prepare for trial, attempting to suggest that her testimony was unreliable because it was "coached." Aplt. Br. at 12; *see* R., Vol. 4 at 234–36. He argues that the instruction insulated from the jury's scrutiny the cross-examination of the victim about being improperly influenced by the prosecutor. He points to one particular event at trial. On direct examination the victim said that she had never used "spice."[2] The prosecutor later asked for a recess. When questioning resumed, she reversed her testimony,

---

[2] Spice is "a mixture of herbs and spices that is typically sprayed with a synthetic compound chemically similar to THC, the psychoactive ingredient in marijuana." Drug Fact Sheet: K2 or Spice (Drug Enforcement Administration), http://www.dea.gov/druginfo/drug_data_sheets/K2_Spice.pdf (last visited Feb. 22, 2017)

admitting that she had used the substance. The prosecutor commended her for coming forward. Defendant says that without Instruction 10 the victim would have been discredited for lying on the stand, but with it the jury instead was able to approve of her recess conversation with the prosecutor and to use the change in testimony to reinforce her credibility.

We are not persuaded. Instruction 10 does not misstate the law, and it educated jurors on a point that may have been unfamiliar to them. Defendant argues in essence that the instruction suggests that nothing improper could possibly occur in such discussions. But that is not what it says. And it does not prevent defense counsel from making a commonsense suggestion that the witness was influenced by inappropriate coaching. In fact, counsel did so in this case, both during cross-examination and during closing argument. Giving the instruction was not an abuse of discretion.

### 3. Instruction 16

Instruction 16 stated in pertinent part: "You may infer, but you are certainly not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted." R., Vol. 1 at 102. Defendant argues that the instruction was (1) ambiguous, because the court did not tell the jury which element the instruction was meant to modify, and (2) confusing, because it created uncertainty as to the requisite level of intent. He asserts that Instruction 16 is meant for general intent offenses, whereas the crimes at issue require specific intent.

We have expressed discomfort with this instruction. *See, e.g.*, *United States v. Heath*, 580 F.2d 1011, 1025 (10th Cir. 1978); *United States v. Woodring*, 464 F.2d 1248,

11

1251 (10th Cir. 1972) (not plain error). But we have not reversed a conviction because of its use if the court has made clear to the jury, through the jury instructions as a whole, that the burden is on the government to prove the requisite intent beyond a reasonable doubt. *See Heath*, 580 F.2d at 1025. That is the situation here. For example, Instruction 13 provided: "[T]he government must prove each of the following elements beyond a reasonable doubt: First, that on or about July 18, 2013, the defendant used force with *intent* to cause [the victim] to engage in a sexual act." R., Vol. 1 at 99 (emphasis added). We decline to reverse on this ground. Instruction 16 is a matter of common sense, regardless of whether the intent at issue could be termed general intent or specific intent. It explicitly states that the jury need not infer the requisite intent. Counsel can still debate whether the inference is appropriate in the particular circumstances of the case.

### C. Simple-Assault Instruction

Finally, Defendant argues that the district court should have instructed the jury that it could consider the lesser-included charge of simple assault, rather than just the charges of attempted aggravated sexual abuse and abusive sexual contact. We review for abuse of discretion. *See United States v. Toledo*, 739 F.3d 562, 568 (10th Cir. 2014).

Four conditions must be met for a defendant to be entitled to an instruction on a lesser-included offense:

> First, the defendant must make a proper request; second, the lesser included offense must contain some but not all of the elements of the charged offense; third, the elements differentiating the two offenses must be in dispute; and fourth, the evidence must allow the jury to rationally acquit the defendant on the greater charge and convict on the lesser charge.

12

*Id.* The first two conditions were satisfied. As to the third, Defendant says that "[s]exual intent differentiated the two offenses and was absolutely disputed." Aplt. Br. at 48. And as to the fourth, he says that a finding of guilt depended on believing all that the victim said yet her truthfulness could be doubted because of her drug use and the lack of corroborating forensic evidence. Thus, he argues, the jury could have found that he acted without sexual intent and convicted him of simple assault but not sexual assault. The trial judge rejected this argument, saying that "there is no evidence that [the encounter] was anything but sexual." R., Vol. 4 at 352.

The district court got it right. The victim testified that Defendant disrobed and attempted to get in the shower with her, and that when she attempted to get away he tried to pull her head toward his "private area." The jury could reasonably have found that the alleged incident did not occur. But in our view the district court did not abuse its discretion in finding that there was no reasonable ground for believing that Defendant assaulted the victim but not with sexual intent. *See United States v. Joe*, 831 F.2d 218, 221 (10th Cir. 1987) (fourth requirement for lesser-included-offense instruction on simple assault was not met because evidence "presented only the scenario that defendant grabbed the victim, pushed her to the floor, pulled her lower clothing partly off, and pulled his pants down"). The district court properly refused to give the simple-assault instruction.

## III.   CONCLUSION

We **AFFIRM** the district court's judgment.

13